Jaren Wieland, ISB No. 8265
**MOONEY WIELAND WARREN**
512 W. Idaho St., Suite 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com

Thomas E. Loeser*
Karin B. Swope*
Ellen J. Wen*
**COTCHETT, PITRE & McCARTHY LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
t: (206) (206) 970-8181
f: (650) 697-0577
tloeser@cpmlegal.com
kswope@cpmlegal.com
ewen@cpmlegal.com

*\* Pro Hac Vice forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTICT OF IDAHO

| | |
|---|---|
| STEVEN ELLI, on behalf of himself and a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>KOOTENAI HEALTH, INC.,<br><br>Defendant. | CASE NO.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     JURISDICTION, VENUE, AND CHOICE OF LAW ........................................3

III.    PARTIES ..............................................................................................................3

      A.      Plaintiff Steven Elli ...............................................................................3

      B.      Defendant ................................................................................................4

IV.     FACTUAL BACKGROUND ...............................................................................4

      A.      Defendant failed to adequately protect customer data, resulting in
            the Data Breach. .....................................................................................4

      B.      Defendant was well aware of the need to take special care with
            consumers' PII, PHI and Medical information. ......................................5

      C.      Defendant Failed To Comply With Regulatory Guidance And
            Industry-Standard Cybersecurity Practices. ..........................................6

      D.      Defendant failed to comply with HIPAA's data security
            requirements. ..........................................................................................9

      E.      The Data Breach puts Plaintiff and Class Members at increased
            risk of fraud and identity theft. ............................................................12

V.      CLASS ACTION ALLEGATIONS ...................................................................15

VI.     CAUSES OF ACTION .......................................................................................17

COUNT ONE NEGLIGENCE ......................................................................................17

COUNT TWO NEGLIGENCE PER SE .......................................................................19

COUNT THREE GROSS NEGLIGENCE....................................................................20

COUNT FOUR BREACH OF IMPLIED CONTRACTS.............................................22

COUNT FIVE UNJUST ENRICHMENT.....................................................................24

COUNT SIX DECLARATORY JUDGMENT..............................................................25

VII.    PRAYER FOR RELIEF .....................................................................................26

VIII.   DEMAND FOR JURY TRIAL ..........................................................................26

Plaintiff, Steven Elli, individually and on behalf of all others similarly situated brings this action against Defendant Kootenai Health, Inc. ("Kootenai" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information. Moreover, the release disclosure, and publication of private medical information, such as diagnoses, medications and prescriptions can lead to sophisticated and costly insurance fraud, as well as embarrassment, humiliation and blackmail.

2.    Defendant Kootenai, according to its own website "provides comprehensive medical services to patients in northern Idaho and throughout the Inland Northwest."[2] Its mission is to "improve health one patient at a time in a friendly and professional culture committed to superior quality and safety."[3]

3.    As Defendant has now admitted, "On March 2, 2024, Kootenai Health became aware of unusual activity that disrupted access to certain IT systems."[4] Kootenai finished its "comprehensive review of the impacted data to determine what personal and or protected health

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. LAWYER 28-35 (May 2014), https://articlegateway.com. (last accessed Aug. 30, 2024).

[2] *See* Mission, Vision and Values (kh.org) (last accessed Aug. 30, 2024).

[3] *Id.*

[4] Notice of Data Security Incident (kh.org)(last accessed Aug. 30, 2024).

information was involved … on August 1, 2024."[5] "The information involved, if impacted, may have included individual's names along with dates of birth, Social Security numbers, driver's license or government-issued identification numbers, medical record numbers, medical treatment and condition information, medical diagnoses, medication information, and health insurance information."[6]

4.    On August 12, 2024, Kootenai first disclosed on its website that its networks had been compromised in a cyberattack that was first detected on March 2, 2024 (the "Data Breach").[7] But, Kootenai has yet to notify all of the impacted consumers to this day. Affected individuals have still not received any definitive statement from Kootenai whether their personal and health information has been compromised.

5.    In 2023, Kootenai had approximately $567 million in assets.[8] Kootenai's balance sheet indicates cash and marketable securities amounting to $291 million in 2023.[9] Kootenai could easily have allocated a small portion of its revenue or assets toward cybersecurity and prevention to forestall and prevent the Data breach. But Defendant chose not to adequately protect patients' most sensitive PII and PHI. As a result of the Data Breach, through which their PII and PHI was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. And they must make family and close friends aware that personal health information about class members could be used in fraud and phishing attempts targeting their friends and families. Consequently, Plaintiff and the other Class members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft and other fraudulent behavior.

---

[5] *Id.*

[6] *Id.*

[7] *See Id.*
[8] Kootenai_Health_Annual_Report_2023.pdf (kh.org)(last accessed Aug. 30, 2024).

[9] *See id.*

6.      By this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose private information was accessed during the Data Breach.

## II.      JURISDICTION, VENUE, AND CHOICE OF LAW

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8.      The Court has personal jurisdiction over this action because Defendant maintains its principal place of business in Coeur d'Alene, Idaho, in this District,  has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.      PARTIES

### A.      Plaintiff Steven Elli

10.      Plaintiff Steven Elli is a citizen of and is domiciled in the state of Idaho.

11.      Plaintiff has been a patient at Kootenai in recent years.

12.      Plaintiff provided confidential and sensitive PII and PHI to Kootenai as a condition of receiving medical services. Defendant obtained and continues to maintain Plaintiff's PII and PHI and has a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

13.      Plaintiff would not have entrusted his PII and PHI to Defendant had he known that Defendant failed to maintain adequate data security.

14.     In mid-August, 2024, Plaintiff learned of the Data Breach from news articles and online information.

15.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

16.     As a result of the Data Breach and the release of his PHI and PII, which he expected Defendant to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PHI and PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.     Defendant**

17.     Defendant Kootenai Health, Inc. is an Idaho corporation with its principal place of business located at 2003 Kootenai Health Way, Coeur d'Alene, Idaho 83814.

## IV.     FACTUAL BACKGROUND

**A.     Defendant failed to adequately protect customer data, resulting in the Data Breach.**

18.     In the course of its business, Defendant collects names, dates of birth, Social Security numbers, driver's licenses or government -issued identification numbers, medical records numbers, medical treatment and condition information, medical diagnoses, medical information, and health insurance information. They also maintain medical records subject to the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

19.     As a condition of providing services, Defendant receives, creates, and handles the PII and PHI of Plaintiff and Class Members.

20.     Plaintiff and Class Members must provide Defendant with their sensitive and confidential PII and PHI in order to receive Defendant's services. Plaintiff reasonably expected that Defendant would safeguard their highly sensitive information and keep it confidential.

21.     Due to the sensitivity of the PII and PHI that Defendant handles, Defendant is aware of its critical responsibility to safeguard this information—and, therefore, how devastating its theft is to individuals whose information has been stolen.

22.     By obtaining, collecting, and storing Plaintiff's and Class Members' PII and PHI, Defendant assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

23.     Despite the existence of these duties, Defendant failed to implement reasonable data security measures to protect the information with which it was entrusted, and ultimately allowed nefarious third-party hackers to compromise Plaintiff's and Class Members' PII and PHI.

**B.     Defendant was well aware of the need to take special care with consumers' PII, PHI and Medical information.**

24.     Defendant is required by law to maintain protected information in compliance with HIPAA requirements.[10] Defendant is aware that it is "required by law to maintain the privacy and security of your health information and to notify affected individuals following a breach of unsecured health information."[11]

25.     Defendant made these representations concerning securing consumers PII and PHI because they knew and understood the severe consequences of losing this data.

26.     As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[12]

27.     The healthcare industry has become a rich target for hackers: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the

---

[10] 42 U.S.C. § 1302d et seq.

[11] Notice of Privacy Practices (kh.org)(last visited Aug. 29, 2024).

[12] Reuters, FBI warns healthcare firms they are targeted by hackers, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last accessed June 13, 2024).

biggest target for online attacks."[13] "The IT environments of healthcare organizations are often complex and difficult to secure. Devices and software continue to be used that have reached end-of-life, as upgrading is costly and often problematic. Many healthcare providers use software solutions that have been developed to work on specific – and now obsolete – operating systems and cannot be transferred to supported operating systems."[14]

28.     PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[15] PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

**C.    Defendant Failed To Comply With Regulatory Guidance And Industry-Standard Cybersecurity Practices.**

29.     Defendant's data security failure stems from its failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII and PHI.

30.     At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

31.     Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to

[13] *The healthcare industry is at risk*, SwivelSecure https://swivelsecure.com/ solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last accessed Aug. 30, 2024).

[14] Steve Alder, Editorial: *Why Do Criminals Target Medical Records*, HIPAA Journal (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records/#:~:text=Healthcare%20records%20are%20so%20valuable,credit%20cards%20in%20victims'%20names.

[15] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last accessed Aug. 30, 2024).

protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

32.     The FTC recommends:

- limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,
- monitoring activity logs for signs of unauthorized access to customer information.[16]

33.     The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

34.     In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[18] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

---

[16] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last accessed Aug. 30, 2024).

[17]     Federal Trade Commission, *Start With Security* at 2, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Aug. 30, 2024).

[18] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last accessed Aug. 30, 2024).

35. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

36. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

37. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

38. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

39. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[19] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[20]

40. On October 28, 2020, the FBI and two federal agencies issued a "Joint Cybersecurity Advisory" warning that they have "credible information of an increased and

---

[19] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last accessed Aug. 30, 2024).

[20] *2021 DBIR Master's Guide*, VERIZON, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last accessed Aug. 30, 2024).

imminent cybercrime threat to U.S. hospitals and healthcare providers."[21] The Cybersecurity and Infrastructure Security Agency (CISA), the Department of Health and Human Services (HHS), and the FBI issued the advisory to warn healthcare providers to take "timely and reasonable precautions to protect their networks from these threats."[22]

41.     Defendant was aware of its obligations to protect customers' PII, PHI and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendant was at all times fully aware of its obligation to protect the PII and PHI of Defendant's customers as a major healthcare provider. Defendant was also aware of the significant repercussions if they failed to do so because Defendant collected PII and PHI from millions of consumers and knew that this PII and PHI, if hacked, would result in injury to consumers, including Plaintiff and Class Members.

42.     Based upon the known details of the Data Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**D.     Defendant failed to comply with HIPAA's data security requirements.**

43.     Defendant is covered by HIPAA (see 45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule.[23] These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

---

[21] *Ransomware Activity Targeting the Healthcare and Public Health Sector*, JOINT CYBERSECURITY ADVISORY, https://us-cert.cisa.gov/sites/default/files/publications/AA20-302A_Ransomware%20_Activity_Targeting_the_Healthcare_and_Public_Health_Sector.pdf (last accessed Aug. 30, 2024).

[22] *Id.*

[23] 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

44. HIPAA prohibits unauthorized disclosures of "protected health information" and it requires that Defendant implement appropriate safeguards for this information. HIPAA requires that entities covered by its rules, including Defendant, to provide notice of a breach of unsecured protected health information—i.e., non-encrypted data—without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

45. Following a data breach at a HIPAA covered entity, the HIPAA Omnibus Rule dictates it "must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported." The four-factor risk assessment includes:

    a) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers);

    b) the recipient of the PHI;

    c) whether the PHI was actually acquired or viewed; and,

    d) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[24]

46. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

47. Defendant failed to comply with these HIPAA requirements and, indeed, its own Privacy Practices. Defendant did not:

    a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b) Adequately protect Plaintiff's and the Class Members' Personal Information;

---

[24] 78 Fed. Reg. 5641-46; see also 45 C.F.R. § 164.304.

c) Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d) Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e) Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f) Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h) Take safeguards to ensure that Defendant's business associates adequately protect protected health information;

i) Conduct the four-factor Risk Analysis following the Data Breach;

j) Properly send timely notice to Plaintiff and the Classes pursuant to 45 C.F.R. §§ 164.400-414;

k) Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l) Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. §164.530(b).

E.    **The Data Breach puts Plaintiff and Class Members at increased risk of fraud and identity theft.**

48.    Defendant's failure to keep Plaintiff's and Class Members' PII secure has severe ramifications. Given the sensitive nature of the PII and PHI stolen in the Data Breach—names, dates of birth, Social Security Numbers, driver's license or government-issued identification numbers, medical record numbers, medical treatment and condition information, medical diagnoses, medical information, and health information information—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff has suffered injury and faces an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

49.    There is little doubt that consumers PII and PHI from the Data Breach will be circulating on the dark web, as it is highly valuable. Malicious actors use PII and PHI to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII and PHI to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[25]

50.    Further, identity thieves often wait months or years to use PII obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and PHI and identifies the victims as Defendant's customers materially increases the risk to Plaintiff and the Class.

51.    The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for

---

[25] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

years."[26] Moreover, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. Plaintiff will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach. In other words, Plaintiff has been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

52.     Plaintiff and Class Members have also realized harm in the lost or reduced value of their PII. Defendant admits the PII compromised in the Breach is valuable. Defendant collects, retains, and uses Plaintiff's PII to earn revenue. Plaintiff's PII is not only valuable to Defendant, but Plaintiff's also place value on their PII based on their understanding that their PII is a financial asset to companies who collect it.[27]

53.     Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiff's and Class Member's PII and PHI that was permitted without authorization by Defendant. This market value for access to PII can be determined by reference to both legitimate and illegitimate markets for such information.

54.     Moreover, Plaintiff and Class Members value the privacy of this information and expect Defendant to allocate enough resources to ensure it is adequately protected. Customers would not have done business with Defendant, provided their PII and payment card information, or paid the same prices for Defendant's goods and services had they known Defendant did not

---

[26] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last accessed June 13, 2024).

[27] *See, e.g.*, Ponemon Institute, LLC, *Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers* at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or commodities" and valuing, as but one example, their Social Security number at $55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html.

implement reasonable security measures to protect their PII.[28] Customers reasonably expect that the payments they make to Defendant and those made on their behalf through government programs and insurance, incorporate the costs to implement reasonable security measures to protect customers' PII. And because consumers value data privacy and security, companies with robust data security practices can command higher prices than those who do not. As a result, Plaintiff and Class Members did not receive the benefit of their bargain with Defendant because they paid for services they expected but did not receive.

55.     Given Defendant's failure to protect their PII and PHI, Plaintiff and Class Members have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII and PHI remains in Defendant's possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

56.     In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the lost value of unauthorized access to Plaintiff's and Class Members' PII and PHI permitted by Defendant; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (vi) Defendant's retention of profits attributable to Plaintiff's and Class Members' PII and PHI that Defendant failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the

---

[28] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html (last accessed June 13, 2024) (noting approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

Data Breach; (ix) overpayments to Defendant for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII and PHI, which was not the case; and (x) nominal damages.

## V.      CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information and/or Protected Health Information was compromised as a result of the Data Breach.

58.     **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or identity of the Class members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least 464,088[29] individuals dispersed throughout the United States. The number of Class members is so numerous that joinder of all Class members is impracticable. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendant.

59.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a.   whether Defendant engaged in the conduct alleged herein;

b.   whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class members' PII and PHI;

c.   whether Defendant violated HIPAA;

d.   whether Defendant timely, accurately, and adequately informed Plaintiff and Class members that their PII and PHI had been compromised;

e.   whether Defendant breached its legal duty by failing to protect the PII and PHI of Plaintiff and Class members;

f.   whether Defendant acted reasonably in securing the PII and PHI of Plaintiff and Class members;

---

[29] Office of the Maine AG: Consumer Protection: Privacy, Identity Theft and Data Security Breaches (last visited Aug. 30, 2024).

g.  whether Plaintiff and Class members are entitled to injunctive relief; and

h.  whether Plaintiff and Class members are entitled to damages and equitable relief.

60.  **Typicality:** Plaintiff's claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and Class members arise from the same operative facts and are based on the same legal theories.

61.  **Adequacy:** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and his counsel.

62.  **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE

63.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.    Defendant owed a duty to Plaintiff and Class members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class members' information was adequately secured from unauthorized access.

65.    Defendant's Notice of Privacy Practices acknowledged Defendant's duty to adequately protect Plaintiff's and Class members' PII and PHI.

66.    Defendant is covered by HIPAA (see 45 C.F.R. § 160.102) and, as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

67.    Defendant owed a duty to Plaintiff and Class members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class members' PII and PHI.

68.    Defendant also had a duty to only maintain PII and PHI that was needed to serve customer needs.

69.    Defendant owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff's and Class members' PII and PHI.

70.    Defendant also had independent duties under Plaintiff's and Class members' state laws that required Defendant to reasonably safeguard Plaintiff's and Class members' PII and PHI, and promptly notify them about the Data Breach.

71.     Defendant had a special relationship with Plaintiff and Class members as a result of being entrusted with their PII and PHI, which provided an independent duty of care. Plaintiff's and Class members' willingness to entrust Defendant with their PII and PHI was predicated on the understanding that Defendant would take adequate security precautions. Moreover, Defendant was capable of protecting its networks and systems, and the PII and PHI they stored on them, from unauthorized access.

72.     Defendant breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class members' PII and PHI, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class members' PII and PHI.

73.     But for Defendant's breach of duties, including the duty to use reasonable care to protect and secure Plaintiff's and Class members' PII and PHI, Plaintiff's and Class members' PII and PHI would not have been accessed by unauthorized parties.

74.     Plaintiff and Class members were foreseeable victims of Defendant's inadequate data security practices. Defendant knew or should have known that a breach of its data security systems would cause damage to Plaintiff and Class members.

75.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class members' PII and PHI would result in unauthorized access to Defendant's networks, databases, and computers that stored or contained Plaintiff and Class members' PII and PHI.

76.     As a result of Defendant's negligent failure to prevent the Data Breach, Plaintiff and Class members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized

acquisition of Plaintiff and Class members' PII and PHI has also diminished the value of the PII and PHI.

77.     The harm to Plaintiff and Class members was a proximate, reasonably foreseeable result of Defendant's breaches of the aforementioned duties.

78.     Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**

79.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80.     Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

81.     In addition, under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class members' PII.

82.     Defendant breached these duties to Plaintiff and Class members, under the FTCA and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

83.     Defendant is covered by HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. HIPAA prohibits unauthorized disclosures of "protected health information." which includes the information at issue here.

84.     Plaintiff and Class members were foreseeable victims of Defendant's violations of the FTCA, HIPAA and state data security statutes. Defendant knew or should have known that the failure to implement reasonable measures to protect and secure Plaintiff's and Class members' PII would cause damage to Plaintiff's and Class members.

85.    Defendant's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

86.    But for Defendant's violation of the applicable laws and regulations, Plaintiff's and Class members' PII would not have been accessed by unauthorized parties.

87.    As a result of Defendant's failure to comply with applicable laws and regulations, Plaintiff and Class members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII has also diminished the value of the PII.

88.    The harm to Plaintiff and the Class members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

89.    Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

## <u>COUNT THREE</u>
### GROSS NEGLIGENCE

90.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91.    Plaintiff and Class members entrusted Defendant with highly sensitive and inherently personal private data subject to confidentiality laws.

92.    In requiring, obtaining and storing Plaintiff's and Class members' PII and PHI, Defendant owed a duty of reasonable care in safeguarding the PII and PHI.

93.    Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class members' PII and PHI were secured from unauthorized access.

94.     Defendant's networks, systems, protocols, policies, procedures, and practices, as described above, were not reasonable given the sensitivity of the Plaintiff's and Class members' private data and the known vulnerabilities of Defendant's systems.

95.     Defendant did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

96.     Upon learning of the Data Breach, Defendant should have immediately disclosed the Data Breach to Plaintiff and Class members, credit reporting agencies, the Internal Revenue Service, financial institutions, and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and Class members as a result of the Data Breach.

97.     Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class members' PII and PHI were secured from unauthorized access, Defendant ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

98.     Defendant's behavior establishes facts evidencing a reckless disregard for Plaintiff and Class members' rights.

99.     Defendant, therefore, was grossly negligent.

100.    Defendant's negligence also constitutes negligence per se.

101.    The negligence is directly linked to injuries.

102.    As a result of Defendant's reckless disregard for Plaintiff's and Class members' rights by failing to secure their PII and PHI, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect

Class Action Complaint                    21

identity theft. The unauthorized acquisition of Plaintiff's and Class members' PII and PHI has also diminished the value of the PII and PHI.

103.    The harm to Plaintiff and the Class members was a proximate, reasonably foreseeable result of Defendant's breaches of the applicable laws and regulations.

104.    Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

<u>**COUNT FOUR**</u>
**BREACH OF IMPLIED CONTRACTS**

105.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106.    Plaintiff and Class members were required to provide their PII and PHI to obtain services from Defendant. Plaintiff and Class members entrusted their PII and PHI to Defendant in order to obtain services from it.

107.    By providing their PII and PHI, and upon Defendant's acceptance of such information, Plaintiff and Class members on one hand, and Defendant on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Defendant was obligated to take reasonable steps to secure and safeguard that information.

108.    Defendant had an implied duty of good faith to ensure that the PII and PHI of Plaintiff and Class members in its possession was only used in accordance with their contractual obligations.

109.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Defendant expressly assented to these terms in its Notice of Privacy Practices as alleged above.

110.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI.

Class Action Complaint                    22

111.    Plaintiff and Class members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant and/or providing the PII and PHI required by Defendant.

112.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class members' PII and PHI, resulting in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class members.

113.    Further, on information and belief, Defendant has not yet provided Data Breach notifications to Plaintiff and other affected Class members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII or PHI. Plaintiff and these Class members are unaware of the potential source for the compromise of their PII and PHI.

114.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

115.    As a result of Defendant's conduct, Plaintiff and Class members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

116.    Neither Plaintiff, nor Class members, nor any reasonable person would have provided their PII and PHI to Defendant had Defendant disclosed that their security was inadequate or that they did not adhere to industry-standard security measures.

117.    As a result of Defendant's breach, Plaintiff and Class members have suffered actual damages resulting from theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain in imminent risk of suffering additional damages in the future.

118.    As a result of Defendant's breach, Plaintiff and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from

the loss of their PII and PHI. As a result, Plaintiff and the Class members have suffered actual identity theft and the ability to control their PII and PHI.

119.    Accordingly, Plaintiff and Class members have been injured as a result of Defendant's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT FIVE
**UNJUST ENRICHMENT**

120.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

121.    Plaintiff and Class members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

122.    Defendant collected, maintained, and stored the PII and PHI of Plaintiff and Class members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class members.

123.    The money that Plaintiff and Class members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII and PHI, as evidenced by the Data Breach.

124.    As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII and PHI, Plaintiff and Class members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class members paid for, and the services they received without reasonable data privacy.

125.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class members paid for.

126.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive

trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT SIX
### DECLARATORY JUDGMENT

127.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

128.    Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se and gross negligence, and violations of various state and federal statutes.

129.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII and PHI of Plaintiff and the Class, as evidenced by the Data Breach.

130.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII and PHI of Plaintiff and the Class going forward.

131.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII and PHI of Plaintiff and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII and PHI of Plaintiff and the Class.

132.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII and PHI of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

## VII.    PRAYER FOR RELIEF

Plaintiff, on behalf of himself and on behalf of the proposed Class, requests that the Court:

a.    Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b.    Find that Defendant breached its duty to safeguard and protect the PII and PHI of

Plaintiff and Class members that was compromised in the Data Breach;

       c.      Award Plaintiff and Class members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

       d.      Award equitable, injunctive, and declaratory relief as may be appropriate;

       e.      Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

       f.      Award pre-judgment and post-judgment interest as prescribed by law; and

       g.      Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

September 4, 2024                 Respectfully submitted,

*Jaren Wieland*
_____
Jaren Wieland, ISB No. 8265
**MOONEY WIELAND WARREN**
512 W. Idaho St., Suite 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com


**COTCHETT, PITRE & MCCARTHY LLP**
Thomas E. Loeser*
Karin B. Swope*
Ellen J. Wen*
999 N. Northlake Way, Suite 215
Seattle, WA 98103
t: (206) (206) 970-8181
f: (650) 697-0577
tloeser@cpmlegal.com
kswope@cpmlegal.com
ewen@cpmlegal.com


*Counsel for Plaintiff and the Proposed Class*